UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| MICHAEL RAY AXTON, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:12-cv-216 |
| | ) | (Collier/Carter) |
| CAROLYN W. COLVIN | ) | |
| Commissioner of Social Security | ) | |
|     Defendant | ) | |

REPORT AND RECOMMENDATION

This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a Report and Recommendation regarding the disposition of the plaintiff's Motion for Judgment on the Pleadings (Doc. 16) and defendant's Motion for Summary Judgment (Doc. 20).

This action was instituted pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying the plaintiff a period of disability and disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 416(I) and 423.

For the reasons stated herein, I RECOMMEND the decision of the Commissioner be AFFIRMED.

Plaintiff's Age, Education, and Past Work Experience

Plaintiff was 58 years old on his date last insured, has a high school education, and past relevant work as a truck driver and a construction worker (Tr. 17, 31-33).

Claim for Benefits

Plaintiff filed an application for Disability Insurance Benefits on December 15, 2009 alleging an onset date of June 24, 2005. Because Plaintiff was in prison through 2009 he

1

amended his onset date to June 16, 2009 at the Administrative Hearing (Tr. 27-28, 37, and 86-89). The initial application was denied on March 17, 2010 (Tr. 38-42). Request for Reconsideration was filed timely on April 13, 2010 (Tr. 43) and subsequently denied by decision of June 2, 2010 (Tr. 46-49). A timely request for a hearing before an administrative law judge was filed on June 18, 2010 by the Plaintiff (Tr. 50-51). A hearing was held on January 28, 2011 before S.W. Swartzberg, Administrative Law Judge (ALJ) (Tr. 25-35). The ALJ entered a decision denying benefits to the Plaintiff on February 28, 2011 (Tr. 7-22). He found Plaintiff was not disabled from June 16, 2009, his alleged onset date, through December 31, 2010, his date last insured (Tr. 18). A timely appeal to the Appeals Council was made and subsequently denied by decision of March 26, 2012 (Tr. 1-3). Plaintiff timely commenced this appeal in the United States District Court for the Eastern District of Tennessee to request this Court to review the decision of the Commissioner.

## Standard of Review - Findings of the ALJ

To establish disability under the Social Security Act, a claimant must establish he/she is unable to engage in any substantial gainful activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. § 404.1520. The following five issues are addressed in order: (1) if the claimant is engaging in substantial gainful activity he/she is not disabled; (2) if the claimant does not have a severe impairment he/she is not disabled; (3) if the claimant's impairment meets or equals a

2

listed impairment he/she is disabled; (4) if the claimant is capable of returning to work he/she has done in the past he/she is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy he/she is not disabled. *Id.* If the ALJ makes a dispositive finding at any step, the inquiry ends without proceeding to the next step. 20 C.F.R. § 404.1520; *Skinner v. Secretary of Health & Human Servs.*, 902 F.2d 447, 449-50 (6th Cir. 1990). Once, however, the claimant makes a prima facie case she cannot return to her former occupation, the burden shifts to the Commissioner to show there is work in the national economy which the claimant can perform considering her age, education and work experience. *Richardson v. Secretary v. Secretary of Health & Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review to be applied by this Court is whether the findings of the Commissioner are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971); *Landsaw v. Secretary of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side of the issue, if there is evidence to support the Commissioner's findings they must be affirmed. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for the Commissioner's merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Secretary of Health & Human Servs.*, 790 F.2d 450 n. 4 (6th Cir. 1986).

After considering the entire record, the ALJ made the following findings:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2010.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of June 16, 2009 through his date last insured of December 31, 2010 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: Graves' disease, hypothyroidism, diet controlled diabetes mellitus; coronary artery disease; chronic obstructive pulmonary disease; osteoarthritis; mild depression; and personality disorder (20 C.F.R. 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) with frequent postural activities; with frequent handling and fingering bilaterally; which does not require concentrated exposure to fumes and other respiratory irritants; which is simple, routine, and repetitive; and which deals with things rather than people.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on February 15, 1952 and was 58 years old, which is defined as an individual of advanced age, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from June 16, 2009, the alleged onset date, through December 31, 2010, the date last insured (20 CFR 404.1520(g)).

(Tr. 10-18).

## Issues Raised

1. The ALJ erred in not giving proper weight and explanation for not following or adopting the opinions of the claimant's treating physician, Dr. Nathan Ridgeway.

2. The ALJ erred in not giving proper weight and explanation for not following or adopting the opinion of the Independent Medical Evaluation of Dr. Samuel Breeding.

3. The ALJ erred in assessing the Plaintiff's residual functional capacity in determining he had the ability to perform work at a medium exertional level.

## Relevant Facts

Plaintiff's medical treatment is set forth in detail in the ALJ's Administrative Decision (Tr. 10-18) and in Plaintiff's memorandum. I will not repeat it here but will refer to relevant portions of it in the analysis section.

## Analysis

In the issues raised, Plaintiff argues the ALJ erred in not giving proper weight to the opinions of Plaintiff's treating physician, Dr. Nathan Ridgeway, and Dr. Samuel Breeding, the independent medical evaluator, and further erred in assessing Plaintiff to be capable of work at a medium exertional level. For reasons that follow, I disagree.

The weight afforded a physician's opinion regarding the nature and severity of a claimant's impairments depends upon the examining relationship or treating relationship the physician may have had with the claimant, the evidence the physician presents to support his or her opinion, how consistent the physician's opinion is with the record as a whole, the physician's

5

specialty, and other factors. See 20 C.F.R. § 404.1527(c). Generally, a treating physician's opinion is entitled to more weight and an ALJ must give good reasons for rejecting a treating physician's opinion. See 20 C.F.R. § 404.1527(c)(2); Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Sixth Circuit, however, "has consistently stated that [the Commissioner] is not bound by the treating physician's opinions, and that such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence." Bogle, 998 F.2d at 347-48; see 20 C.F.R. § 404.1527(c); Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 477 (6th Cir. 2003); Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529-30 (6th Cir. 1997).

Opinions on some issues, such as whether the claimant is disabled, whether a claimant meets a Listing, the claimant's RFC, and the application of vocational factors, "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. § 404.1527(d); see Social Security Ruling (SSR) 96-5p.[1] Opinions on issues reserved for the Commissioner "even when offered by a treating source, . . . can never be entitled to controlling weight or be given special significance." SSR 96-5p. Although physicians' statements about what a claimant can do are relevant evidence, they are not determinative. The ALJ has the responsibility of assessing a claimant's RFC and determining whether a claimant meets a Listing. See 20 C.F.R. §§ 404.1513(b), 404.1527(d), 404.1545, 404.1546(c); SSR 96-5p.

The Sixth Circuit has recognized that even when an ALJ does not provide sufficient

---

[1] SSR 96-5p (<http://www.ssa.gov/OP_Home/rulings/di/01/SSR96-05-di-01.html>)

6

reasons for discounting a physician's opinion, the ALJ's oversight may be harmless error "if a treating physician's opinion is so patently deficient that the Commissioner could not possibly credit it . . . ." Wilson, 378 F.3d at 547. Further, "if the Commissioner adopts the opinion of a treating source or makes findings consistent with the opinion, it may be irrelevant that the ALJ did not give weight to the treating physician's opinion, and the failure to give reasons for not giving such weight is correspondingly irrelevant." Id. There may also be situations "where the Commissioner has met the goal of § 1527(d)(2)– the provision of the procedural safeguard of reasons–even though she has not complied with the terms of the regulation." Id.

On November 23, 2010, Dr. Ridgeway completed a form entitled "Medical Source Statement." (Tr. 491-95). Dr. Ridgeway opined in part that Plaintiff could sit for four to eight hours and stand or walk for three hours in an eight-hour day (Tr. 493). Dr. Ridgeway opined Plaintiff could occasionally lift up to twenty pounds (Tr. 494). Dr. Ridgeway also opined Plaintiff must rest lying down or reclining in a supine position for two hours in an eight-hour day to relieve pain and fatigue (Tr. 494). Based on these opinions, Dr. Ridgeway ultimately concluded Plaintiff was not capable of performing even sedentary work. The ALJ found Dr. Ridgeway's opinion was entitled to little weight because it was inconsistent with his own objective findings and the overall evidence in the record, and appears to be based primarily on Plaintiff's subjective complaints (Tr. 16, 488, 494).

As the ALJ discussed, Plaintiff was incarcerated from December 2005 through May 2009 (Tr. 12, 320). Records from the Department of Corrections show that Plaintiff was seen by Dr. Elaine Pelley in January 2009 for subclinical hyperthyroidism (Tr. 12, 166-68). Plaintiff had occasional respiratory wheezes, but no rales or rhonchi (Tr. 167). A thyroid uptake and scan

7

performed in March 2009 indicated a cold area, but was otherwise normal (Tr. 12, 172). An ultrasound did not show any nodule correlating to this area (Tr. 12, 170, 172-73). On May 1, 2009, Plaintiff underwent radioactive iodine ablation for presumed Graves' disease (Tr. 12, 170-71). Dr. Pelley noted that Plaintiff also had diabetes which was diet controlled, underlying coronary artery disease, and chronic obstructive pulmonary disease (Tr. 12).

Plaintiff was hospitalized on November 20, 2009, for hypothyroidism with mixed edema (Tr. 13, 329-37). Plaintiff was supposed to be on several medications, but had not taken any medication for at least four months (Tr. 13, 333, 338). His symptoms improved rapidly with IV Synthroid (Tr. 13, 333). Plaintiff was later placed on oral Synthroid (Tr. 13). At the time, Plaintiff was believed to have acute on-chronic kidney failure, but a kidney ultrasound was normal (Tr. 13, 333). Plaintiff was discharged in stable condition on medications (Tr. 13, 333-34).

Plaintiff was seen at the emergency room on January 4, 2010, for medication refills (Tr. 13, 324-25). He was prescribed Norvsac and Synthroid (Tr. 13, 324-25). Plaintiff had a normal physical examination (Tr. 324). He was also seen in the emergency room on February 8, 2010, for complaints of chest pain (Tr. 13, 340-41). A cardiac study was normal with no evidence of induced ischemia or myocardial infarction suggested (Tr. 13, 340-41).

Plaintiff was treated intermittently at Friends in Need beginning in February 2010 (Tr. 13, 372-77). Treatment records indicate Plaintiff had borderline diabetes mellitus which was diet controlled (Tr. 13, 375, 377). Treatment records also indicate Plaintiff had COPD and examinations showed rhonchi and wheezing (Tr. 13, 375-76, 488, 490). Plaintiff was prescribed medication (Tr. 13, 376). Plaintiff smoked cigarettes and was counseled regarding

8

smoking cessation (Tr. 13, 376). In March 2010, it was noted "generally he feels well, no chest pain or palpation. Motivated to exercise and lose weight ." (Tr. 374). In May 2010, Plaintiff's hypothyroidism was asymptomatic, his hypertension was controlled, his diabetes was controlled with medication, and he was counseled regarding smoking cessation (Tr. 500). In July 2010, Plaintiff reported doing well with no complaints (Tr. 498). But, Plaintiff also reported he was smoking and had an AM cough and shortness of breath on walking (Tr. 498). Plaintiff was advised to lose weight, stop smoking, and gradually increase his exercise (Tr. 498).

In October 2010, Plaintiff complained of a headache and shortness of breath on exertion (Tr. 490). Plaintiff reported smoking a half a pack of cigarettes per day (Tr. 490). Plaintiff was prescribed Chantix for smoking cessation (Tr. 490). When last seen in November 2010, Dr. Ridgeway noted that Plaintiff had COPD, osteoarthritis of the lumbar spine, fingers, and knees with limited range of motion in his back and crepitus in his knees (Tr. 13, 487-88). Plaintiff also had distant breath sounds and rhonchi and wheezing in his lungs (Tr. 488). Plaintiff had not started Chantix (Tr. 488). When Dr. Ridgeway completed his assessment in November 2010, he noted Plaintiff had normal grip strength, no tenderness, no muscle weakness, no muscle atrophy, no muscle spasm, and a negative straight leg raise (Tr. 491). Plaintiff also had a normal gait and no swelling (Tr. 491). I conclude this evidence gives support to the ALJ's conclusion that Dr. Breeding's opinion was inconsistent with his own objective findings.

The ALJ's decision is also supported by other evidence of record: the opinions of Dr. Reeta Misra and Dr. Frank Pennington, the non-examining state agency physicians (Tr. 363-71). See 20 C.F.R.§§ 404.1512(b)(6), 404.1513(c), 404.1527(e)(2); SSR 96-6p. Dr. Misra reviewed the record on March 13, 2010, and opined that Plaintiff could perform a range of medium work

9

consistent with the ALJ's RFC finding (Tr. 363-70). Dr. Misra discussed the record, including Dr. Breeding's opinion, and noted that objective findings–such as normal range of motion and normal strength–support her opinion that Plaintiff could perform a range of medium work (Tr. 369-70). Dr. Pennington reviewed the record in May 2010 and affirmed Dr. Misra's opinion (Tr. 385). As Dr. Pennington noted, an examination from March 2010 showed Plaintiff was doing well (Tr. 385). State agency consultants and other program physicians are considered experts and their opinions may be entitled to great weight if supported by the evidence in the record. See 20 C.F.R. §§ 404.1527(e)(2)(i); SSR 96-6p. The ALJ properly accepted these opinions because they are consistent with the evidence (Tr. 16). Therefore, these opinions provide additional substantial evidence in support of the ALJ's decision.

Plaintiff argues the state agency physicians failed to recognize his COPD (Plaintiff's Memorandum at 14-15). However, as the Commissioner notes, Plaintiff did not even report limitations related to COPD in initial forms he submitted as part of his disability application (Tr. 100-01). Plaintiff also did not report limitations related to COPD when he was evaluated by Dr. Breeding in March 2010 (Tr. 346). Plaintiff later reported in June 2010 that he was having a "harder time breathing" as of May 2010, but he did not report any new physical limitations (Tr. 156). Moreover, other than Plaintiff's sporadic subjective reports of difficulty breathing that are contained in the treatment record, the record does not support Plaintiff's claim that he has functional limitations beyond those assessed by the ALJ.

Dr. Samuel Breeding conducted a consultative examination on March 4, 2010 (Tr. 13, 346-48). Plaintiff reported stiffness in his joints and difficulty with gripping, depression, low back pain, and a hearing problem (Tr. 346). Plaintiff reported that he was no longer able to work

10

as a truck driver due to travel restrictions related to his conviction for a sexual offense, not because of physical limitations (Tr. 347). On physical examination, Plaintiff's lungs were clear, he had normal range of motion in all of his major joints, and he had normal muscle strength in all of his major muscle groups except his grip strength which was slightly reduced to 4+/5 bilaterally (Tr. 347). Overall, Dr. Breeding opined Plaintiff could "lift <u>at least</u> 35 lbs occasionally. He can sit for two to six hours in an eight-hour day. He can stand for six hours in an eight-hour day." (Tr. 348) (emphasis added). Plaintiff also contends the ALJ did not properly analyze Dr. Breeding's opinion (Doc. 17, Plaintiff's Memorandum at 10-15). However, the ALJ properly rejected Dr. Breeding's opinion that arguably limits Plaintiff to lifting thirty-five pounds occasionally because it is inconsistent with his own objective findings and the overall evidence in the record (Tr. 16).

As summarized by the ALJ:

> [T]reatment records . . . show only minimal treatment and minimal objective findings. While [Plaintiff] has a long history of Graves' disease and hypothyroidism, it appears to be stable. [Plaintiff] has diabetes mellitus, which is diet controlled and has no diabetic complications. He has a history of coronary artery disease; however, current testing including an ECG and a gated Lexiscan SPECT Cardiolite Cardiac Study were normal. Although [Plaintiff] had chronic obstructive pulmonary disease, the record does not show evidence of frequent or severe episodes of respiratory distress. [Plaintiff] has arthralgias and osteoarthritis, but has sought only minimal treatment during the period at issue.

(Tr. 16).

I conclude that substantial evidence, as discussed above and in the ALJ's decision, supports the ALJ's RFC finding and his decision to give little weight to the opinions of Dr. Ridgeway and Dr. Breeding.

Plaintiff also argues the ALJ failed to mention the limitations in a February 2009 notation

11

in his Department of Corrections records that indicates he should be limited to light work in support of his argument that the ALJ erred in limiting him to medium work (Plaintiff's Memorandum at 12-13). Although it is unclear if this notation was signed by either an examining or treating physician (Tr. 418), even if the opinion was signed by a treating physician, it is not entitled to any weight because it does not relate to the period under consideration. The issue in this case is whether Plaintiff was disabled from June 16, 2009, through December 31, 2010, the date last insured. This opinion was rendered shortly after Plaintiff began treatment for hyperthyroidism in January of 2009, and the record indicates Plaintiff's condition improved prior to his release from prison (Tr. 389). The record as discussed above supports the ALJ's finding that Plaintiff could perform a range of medium work.

Plaintiff failed to meet his burden of proving that he suffers from disabling limitations. See 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512(a); Foster, 279 F.3d at 353. I conclude the ALJ properly considered the relevant evidence and properly performed his duty as the trier of fact of resolving any conflicts in the evidence. See Perales, 402 U.S. at 399. It is not the function of this Court to reweigh the evidence and substitute its own judgment for the Commissioner's merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. Here substantial evidence supports the ALJ's findings and his conclusion that Plaintiff was not disabled.

Conclusion

Having carefully reviewed the entire administrative record and the briefs of the parties filed in support of their respective motions, I conclude there is substantial evidence in the record to support the findings of the ALJ and the decision of the Commissioner, and neither reversal nor remand is warranted on these facts. Accordingly, I RECOMMEND:

(1) The plaintiff's motion for judgment on the record (Doc. 16) be DENIED.

(2) The defendant's motion for summary judgment (Doc. 20) be GRANTED.

(3) The case be DISMISSED. [2]

S/*William B. Mitchell Carter*
UNITED STATES MAGISTRATE JUDGE

---

[2]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).